**This order is SIGNED.**

**Dated: September 1, 2015**

*William J. Thurman*



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

---

*Prepared by:*

Matthew M. Boley, Esq. (8536)
Benjamin J. Kotter, Esq. (9592)
**COHNE KINGHORN, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:  (801) 363-4300
E-mail: mboley@cohnekinghorn.com
         bkotter@cohnekinghorn.com

*Attorneys for* debtor-in-possession
CAMPERWORLD BUSINESS TRUST

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**CAMPERWORLD BUSINESS TRUST**,<br><br>     Debtor. | Bankruptcy No. 15-20383<br><br>Chapter 11<br><br>Honorable William T. Thurman |

## FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION
## OF JOINT PLAN OF REORGANIZATION

This matter came before the Court on September 1, 2015 at 2:00 p.m. (the

"**Confirmation Hearing**") to consider confirmation of the *Joint Plan of Reorganization of the*

*Debtor and Committee dated August 4, 2015* [Docket No. 223] and the *Joint Motion for Entry of*

*Order Approving Modifications to the Plan of Reorganization* [Docket No. 252] (the "**Motion to**

**Modify**"), both filed by Camperworld Business Trust, debtor and debtor-in-possession (the

"**Debtor**") in the above-referenced chapter 11 bankruptcy case (the "**Case**"), and The Official

Members Committee of Camperworld Business Trust (the "**Committee**").  Matthew M. Boley

and Benjamin J. Kotter appeared on behalf of the Debtor.  David T. Berry appeared on behalf of

the Committee.  David H. Leigh appeared on behalf of Zions First National Bank ("**Zions**").

Other counsel and parties-in-interest noted their appearances on the record.

Based upon the evidence received at the Confirmation Hearing, the *Declaration of Diane Williams in Support of Confirmation of the Joint Plan of Reorganization of the Debtor and Committee* [Docket No. 263], other papers filed concerning the Plan [*e.g.*, Docket Nos. 234, 241, 242 and 261], the statements of counsel and other matters of record, having inquired into the legal sufficiency of the evidence adduced, and good cause appearing, the Court hereby

**FINDS AND CONCLUDES**[1] as follows:

A.    <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  This Court has jurisdiction over the Bankruptcy Case[2] pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Bankruptcy Court, including, without limitation, all pleadings, papers and other documents filed, all orders entered, and the transcripts of, and all minute entries on the docket indicating the evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Bankruptcy Case.

C.    <u>Transmittal and Mailing of Materials; Notice</u>.  All due, adequate, and sufficient notices of the Plan, the Motion to Modify, the Confirmation Hearing, and the deadlines for voting on and filing objections to the Plan, were given to all known holders of Claims in accordance with the Bankruptcy Rules.  The Disclosure Statement, Plan, and relevant ballots were transmitted and served in substantial compliance with the Bankruptcy Rules and the Orders of this Court upon Creditors entitled to vote on the Plan, and such transmittal and service were,

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. Pro. 7052.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan.

{00244234.DOCX /}

and are, adequate and sufficient.  No other or further notice of the Plan, the Motion to Modify or the Confirmation Hearing is or shall be required.

D.  <u>Solicitation</u>.  The solicitation of votes for acceptance or rejection of the Plan complied with §§ 1125 and 1126,[3] Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other rules, laws and regulations.  Based on the record before the Court in the Bankruptcy Case, the Debtor and Committee have acted in "good faith" within the meaning of § 1125, and are entitled to the protections afforded by § 1125(e).

E.  <u>Distribution</u>.  All procedures used to distribute the solicitation materials to the applicable holders of Claims and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the orders and local rules of the Bankruptcy Court, and all other rules, laws, and regulations.

F.  <u>Creditors' Acceptance of Plan</u>.  The Plan establishes nine Classes of Claims or Interests.  All impaired Classes of Claims have accepted the Plan.  No Class of Claims has rejected the Plan.  Class 1 (Priority Claims) voted unanimously to accept the Plan.  Class 2 (General Unsecured Claims) voted to accept the Plan by 89% in number and by 89% in dollar amount of votes cast.  Class 5 (Secured Claim of Zions) voted unanimously to accept the Plan.  Classes 3, 6, 7, 8 and 9 neither returned any ballots nor objected to confirmation.  As such, they are deemed to have accepted the Plan.  As such, all Classes of Claims are deemed to have accepted the Plan.[4]

G.  <u>Plan Complies with Bankruptcy Code</u>.  The Plan, as supplemented and modified by the Confirmation Order (as modified and supplemented, the "**Confirmed Plan**"), complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

---

[3]     Unless otherwise provided, all references to statutory sections in these Findings and Conclusions using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

[4]     <u>See, e.g.</u>, <u>In re Ruti-Sweetwater, Inc.</u>, 836 F.2d 1263, 1267-68 (10th Cir. 1988); <u>In re John Kuhni Sons, Inc.</u>, 10-29038 RKM, 2011 WL 1343206 at *4 (Bankr. D. Utah Mar. 30, 2011); <u>In re Jones</u>, 530, F.3d 1284, 1291 (10th Cir. 2008); <u>In re Armstrong</u>, 292 B.R. 678, 684 (10th Cir. B.A.P. 2003).

i.  <u>Proper Classification</u>.  The Claims placed in each Class are substantially similar to other Claims in each such Class.  The Confirmed Plan properly classifies Claims.  In addition to Administrative Expense Claims and Priority Tax Claims, which are not classified under the Confirmed Plan, the Plan designates various separate Classes of Claims based on differences in their legal nature or priority.  Further, valid business, factual and legal reasons exist for separately classifying the various Classes of Claims under the Plan.  Finally, the Classes do not unfairly discriminate between holders of Claims.  Thus, the Confirmed Plan satisfies §§ 1122 and 1123(a)(1).

ii.  <u>Specify Unimpaired Classes</u>.  There are no unimpaired classes under the Confirmed Plan.  Thus § 1123(a)(2) is satisfied.

iii.  <u>Specify Treatment of Impaired Classes</u>.  Classes 1 through 9 are designated as impaired under the Confirmed Plan.  Article 4 of the Confirmed Plan specifies the treatment of the impaired Classes of Claims and Interests, thereby satisfying § 1123(a)(3).

iv.  <u>No Discrimination</u>.  The Confirmed Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect thereto, thereby satisfying § 1123(a)(4).

v.  <u>Implementation of Plan</u>.  The Confirmed Plan provides adequate and proper means for its implementation, thereby satisfying § 1123(a)(5).  Among other things, Articles 5 and 6 of the Confirmed Plan provide for: (a) the vesting of the property of the Debtor and its chapter 11 bankruptcy Estate in the Reorganized Debtor; (b) the formation, structure and management of the Reorganized Debtor; (c) the continuation of business operations by the Reorganized Debtor; and (d) distributions to creditors.

vi.  <u>Corporate Charter Provision Inapplicable</u>.  Section 1123(a)(6) is not applicable as the Confirmed Plan does not provide for the issuance of nonvoting equity

securities.  Without limitation, the Confirmed Plan specifies that: (a) the Reorganized

Debtor will be a nonprofit corporation pursuant to section 501(c)(7) of the Internal

Revenue Code; and (b) does not provide for the issuance of any "securities."  The

"Memberships" or "Membership Interests" in the nonprofit Reorganized Debtor that will

be issued under the Confirmed Plan are not, and will not be, stocks, investment contracts

or other "securities" as defined under federal or state law.

   vii. <u>Selection of Post-Confirmation Manager</u>.  The Disclosure Statement and

the Confirmed Plan designate and disclose Diane Williams as the President of the

Reorganized Debtor, and further identify the initial Directors of the Reorganized Debtor.

Further, provisions in the Confirmed Plan regarding the manner of selection of the

Reorganized Debtor's directors and officers are consistent with the interests of Creditors

and with public policy.  Thus, § 1123(a)(7) is satisfied.

   viii. <u>Additional Plan Provisions</u>.  The Confirmed Plan's provisions are

appropriate and consistent with the applicable provisions of the Bankruptcy Code,

including provisions respecting (a) the assumption and/or rejection of executory contracts

and unexpired leases, (b) the retention and enforcement by the Debtor of claims under

chapter 5 of the Bankruptcy Code and under applicable non-bankruptcy law, and

(c) modification of the rights of holders of secured claims, thus satisfying the

requirements of § 1123(b).

   ix. <u>Bankruptcy Rule 3016(a)</u>.  The Confirmed Plan is dated and identifies the

Debtor and Committee as joint proponents, thereby satisfying Bankruptcy Rule 3016(a).

  H. <u>The Confirmed Plan and the Proponents Comply with the Bankruptcy Code</u>.  The

Confirmed Plan complies with the applicable provisions of the Bankruptcy Code.  Likewise, the

Debtor and the Committee have complied with the applicable provisions of the Bankruptcy

Code.  Thus, §§ 1129(a)(1) and (a)(2) are satisfied. Among other things:

    i.  the Debtor and the Committee are proper proponents of the Plan under

§ 1121(c);

    ii.  the Confirmed Plan complies, and Debtor and Committee have complied,

generally with applicable provisions of the Bankruptcy Code; and

    iii.  the Debtor and Committee have complied with the applicable provisions

of the Bankruptcy Code, including § 1125, the Bankruptcy Rules and orders of the

Bankruptcy Court in transmitting the Plan, the Disclosure Statement, ballots, related

documents and notices, and in soliciting and tabulating votes on the Plan.

   I.  <u>Good Faith</u>.  The Debtor filed the Bankruptcy Case in good faith and for a valid

reorganizational purpose.  Additionally, the Confirmed Plan is proposed in good faith and not by

any means forbidden by law, and therefore complies with the requirements of § 1129(a)(3).  In

determining that the Debtor filed the Bankruptcy Case in good faith and that the Confirmed Plan

has been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Bankruptcy Case and the formulation of the Confirmed Plan.

Among other things, the Court finds:

    i.  the Debtor filed this chapter 11 Case, and the Debtor and Committee have

proposed the Confirmed Plan, for a valid reorganizational purpose;

    ii.  neither this Case nor the Confirmed Plan was filed as a litigation tactic or

for delay;

    iii.  the Debtor has been, and is, actively prosecuting this Case;

    iv.  the Debtor and Committee proposed the Confirmed Plan with the

legitimate and honest purpose of, among other things, restructuring the Debtor's financial

affairs and providing a meaningful return to all classes of creditors;

    v.  the Confirmed Plan is the fruit of arms-length negotiations with creditors,

including input from and discussions with Zions, the Committee, the United States

Trustee and other interested creditors;

vi.     the Confirmed Plan contemplates that the claims of creditors will be satisfied either by (a) at the option of the holders of Class 1 and Class 2 claims, New Member Contracts distributed pursuant to the terms of the Confirmed Plan, or (b) cash distributions to the holders of allowed claims from the continuation of normal business operations;

vii.     the Debtor has ongoing cash receipts and substantial assets to perform obligations under the New Member Contracts and to fund repayment of creditor claims under the Confirmed Plan;

viii.     the Debtor has meaningful "cash flow" that will fund ongoing operations of the Reorganized Debtor as well as payments to creditors and other distributions under the Confirmed Plan, as illustrated by the cash flow projections attached hereto as **Exhibit 1**;

ix.     there are available sources of cash flow to sustain the Confirmed Plan;

x.     this is not a case involving a single creditor;

xi.     rather, there are multiple creditors;

xii.     the Debtor has a reasonable possibility of reorganization; and

xiii.     the Confirmed Plan is feasible, practicable and there is a reasonable likelihood that the Confirmed Plan will achieve its intended results, which are consistent with the purposes of the Bankruptcy Code.

J.     Payments for Services or Costs and Expenses.  Any payment made or to be made under the Confirmed Plan for services or for costs and expenses in or in connection with the Bankruptcy Case prior to the Effective Date, including all fees and expenses incurred by Professionals, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4).

K.     Manager(s) of the Reorganized Debtor.  The Confirmed Plan and/or the Disclosure Statement identify Diane Williams as the President of the Reorganized Debtor, and

also identify the initial Directors of the Reorganized Debtor. The proposed service of these individuals as post-confirmation officers and directors is consistent with the interests of the holders of Claims and with public policy. Therefore, the requirements of § 1129(a)(5) are satisfied.

L.       No Rate Changes.  The Confirmed Plan satisfies § 1129(a)(6) because the Confirmed Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

M.       Best Interests of Creditors Test.  The Confirmed Plan satisfies § 1129(a)(7) with respect to all Classes of Claims, because all Classes have accepted the Plan as modified in the Confirmation Order, which modifications have resulted in the Confirmed Plan. In addition, the holders of all Classes of Claims and Interests will receive or retain under the Confirmed Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the property of the Estate was liquidated under chapter 7 of the Bankruptcy Code on such date.

i.       Each holder of an Allowed Class 2 Claim may elect to receive on account of his, her or its Claim either (a) one or more New Camping Memberships in full satisfaction of the Claim as described in section 4.2.3 of the Plan; or (b) the Class 2 Cash Distributions, as described in section 4.2.4 of the Plan, in a total amount equal to five percent (5%) of the Allowed amount of the Claim. According to the evidence received by the Court (including the Liquidation Analysis prepared by the Debtor), however, the holders of Class 2 Claims (including the counterparties to all Old Member Contracts) are not projected to receive any distribution in a chapter 7 liquidation.

ii.       Class 4 Equity Interests are cancelled under the Plan, and will not receive any distribution under this Plan. According to the evidence received by the Court (including the Liquidation Analysis prepared by the Debtor), the holders of Equity Interests are not projected to receive any distribution in a chapter 7 liquidation. Further,

no holder of an Equity Interest has objected to the Plan on the grounds that it does not satisfy §§ 1129(a)(7) or 1129(b)(2)(C).  As such, the holders of Class 4 Equity Interests "will receive or retain under the [P]lan…not less than the amount that such holder would so receive or retain if the [D]ebtor were liquidated under chapter 7 of [the Bankruptcy Code]…"  Thus § 1129(a)(7) is satisfied as to Class 4 Equity Interests.

N.    Acceptance by Certain Classes.  All Classes of Claims have accepted the Confirmed Plan, as noted above, thereby satisfying § 1129(a)(8). No Class of Claims has rejected the Plan.

i.    Class 1 (Priority Claims) voted unanimously to accept the Plan.

ii.    Class 2 (General Unsecured Claims) voted to accept the Plan by 89% in number and by 89% in dollar amount of votes cast.

iii.    Class 5 (Secured Claim of Zions) voted unanimously to accept the Plan.

iv.    Classes 6, 7, 8 and 9 neither returned any ballots nor objected to confirmation.  As such, they are deemed to have accepted the Plan.  See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988) (holding that non-voting secured creditor who did not timely object to confirmation was deemed to accept the Plan).

v.    Class 3 "Subordinated Claims" will not receive any distribution under the Plan.  As of the date of this Declaration, however, the Debtor is not aware of any Claims within Class 3.  As such, there were not creditors to whom Class 3 Ballots were issued, and no votes in Class 3 were either solicited or received.  Further, no creditor holding a Class 3 Claims has objected to confirmation.

vi.    Class 4 Equity Interests will be cancelled under the Plan, and the holders of Allowed Class 4 Interests will neither retain any property nor receive any distribution under the Plan.  As such, Ballots were not sent to the holders of Class 4 Interests (although Solicitation Packages and Class 2 Ballots were sent to all such Interest holders,

because all holders of pre-Effective Date Equity Interests of the Debtor are parties to Old

Member Contracts).  Class 4 Equity Interests are deemed to "reject" the Plan.

O.      <u>Treatment of Administrative Expense Claims and Priority Tax Claims</u>.  The

Confirmed Plan satisfies the requirements of § 1129(a)(9).  Except to the extent the holder of a

particular Claim agrees to a different treatment, the Confirmed Plan specifies that Administrative

Expense Claims (including professional compensation) and Priority Tax Claims shall be paid as

mandated by § 1129(a)(9) (except to the extent that a holder agrees otherwise).

P.      <u>Acceptance by at Least One Impaired Class</u>.  All Classes of Claims have accepted

the Confirmed Plan, as shown by the Ballot Tabulation Register [Docket No. 261 and 262], and

the acceptance of at least one of such accepting impaired Classes has been determined without

including the votes of any insiders, thus satisfying § 1129(a)(10).

Q.      <u>Feasibility</u>.  The Confirmed Plan is feasible and complies with § 1129(a)(11)

because confirmation is not likely to be followed by a liquidation or the need for further financial

reorganization of the Debtor.  The Confirmed Plan offers a reasonable prospect of success and is

workable.  The Confirmed Plan provides that the Debtor will continue business operation after

the Effective Date.  The Debtor has presented credible evidence that the Debtor will have

sufficient "cash flow" to satisfy its operating expenses and debt obligations after the Effective

Date, and that it should have sufficient cash to fund the cash distributions contemplated under the

Confirmed Plan.  In short, there is a reasonable prospect that the Debtor's anticipated future cash

will be sufficient to fund the payments required under the Confirmed Plan, and that the Debtor

will be able to satisfy its obligations under the Confirmed Plan.  In summary, the evidence shows

that the Confirmed Plan offers a reasonable prospect of success, and is workable.  As such, the

requirements of section 1129(a)(11) are satisfied.

R.      <u>Payment of Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will

be paid on or before the Effective Date pursuant to Section 2.2.3 of the Confirmed Plan, thereby

satisfying § 1129(a)(12).

S.      <u>Continuation of Retiree Benefits</u>.  The Confirmed Plan complies with § 1129(a)(13) because the Debtor is not obligated to pay any retiree benefits subject to § 1114.

T.      <u>No Domestic Support Obligations</u>.  The Debtor does not have any domestic support obligations.  Therefore, § 1129(a)(14) is not applicable.

U.      <u>Projected Disposable Income</u>.  The Debtor is not an individual.  Therefore § 1129(a)(15) is inapplicable.

V.      <u>Transfers Will Comply with Nonbankruptcy Law</u>.  The Confirmed Plan complies with § 1129(a)(16) because any transfers of assets to be made under the Confirmed Plan will be made in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

W.      <u>Fair and Equitable; No Unfair Discrimination</u>.  All Classes of Claims have accepted (or are deemed to have accepted) the Confirmed Plan.  As such, compliance with § 1129(b) is not required as to such accepting Classes of Claims.  In any event, the Confirmed Plan is fair and equitable and does not discriminate unfairly as to any Class of Claims or Interests.

i.      The Confirmed Plan contemplates that the holders of Allowed Class 1 Claims will be paid in full.

ii.      The Confirmed Plan further contemplates that each holder of an Allowed Class 2 Claim may elect to receive on account of his, her or its Claim either (a) one or more New Camping Memberships in full satisfaction of the Claim as described in section 4.2.3 of the Plan, or (b) the Class 2 Cash Distributions, as described in section 4.2.4 of the Plan, in a total amount equal to five percent (5%) of the Allowed amount of the Claim.  Further, the "cram down" requirements of § 1129(b)(B)(ii) are satisfied because the holder of any claim or interest that is junior to the claims of Class 2 (including Class 3 Subordinated Claims and Class 4 Equity Interests) will not receive or retain under the Confirmed Plan on account of such junior claim or interest any property.

iii.     The holders of Allowed Class 3 "Subordinated Claims" will not receive any distribution under this Confirmed Plan.  Nonetheless, the "cram down" requirements of § 1129(b)(B)(ii) are satisfied in that the holder of any claim or interest that is junior to the claims of Class 3 (including Class 4 Equity Interests) will not receive or retain under the Confirmed Plan on account of such junior interest any property.

iv.     All Class 4 Equity Interest will be cancelled under the Confirmed Plan, and the holders of Allowed Class 4 Interests will neither retain any property nor receive any distribution under the Confirmed Plan.  Nonetheless, the "cram down" requirements of § 1129(b)(C)(ii) are satisfied in that the holder of any claim or interest that is junior to the claims of Class 4 (there are none) will not receive or retain under the Plan on account of such junior interest any property.

X.     <u>No Other Plan.</u>  No other chapter 11 plan is pending before the Court in this Bankruptcy Case.  Accordingly, § 1129(c) does not apply.

Y.     <u>Principal Purpose of Confirmed Plan</u>.  The principal purpose of the Confirmed Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Therefore, the Confirmed Plan satisfies the requirements of § 1129(d).

Z.     <u>Small Business Case</u>.  This Case is not a Small Business Case.  As § 1129(e) is not applicable.

AA.     <u>Solicitation</u>.  As evidenced by the docket in this Case, the Plan, the Disclosure Statement, and appropriate ballots were transmitted and served on all parties entitled to copies of thereof (including all persons entitled to vote on the Plan) in substantial compliance with the Bankruptcy Code, Bankruptcy Rules and relevant orders of the Court.  It appears that all procedures used to distribute solicitation materials for the Plan and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all other rules, laws, and regulations.

{00244234.DOCX /}

BB.    The Proposed Modifications to the Plan Do Not Adversely Change Treatment of Creditors' Claims.  The proposed modifications to the Plan discussed and requested in the Motion to Modify and reflected in the Confirmed Plan do not adversely change the treatment of the claim of any creditor that has accepted the Confirmed Plan.  The modifications requested in the Motion to Modify and reflected by the Confirmed Plan are *not* of such a nature and effect that a creditor or interest holder who accepted the plan would be likely to reconsider its acceptance.  Stated another way, the modifications are not likely to trigger reconsideration *de facto*.  As such, the modifications are "immaterial."  In re American Solar King Corp., 90 B.R. 808, 824 (Bank. W.D. Tex. 1998) (quoting 8 Collier on Bankruptcy, ¶ 3019.03, at 3019-3 (15th ed. 1987)) ("A modification is material if it affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.").

CC.    Accordingly, the Confirmed Plan shall be deemed accepted by all creditors who previously have accepted the Plan.  See Fed. R. Bankr. P. 3019(a) (if "the proposed modification does not adversely change the treatment of the claim of any creditor … who has not accepted in writing the modification, it shall be deemed accepted by all creditors … who have previously accepted the plan."); In re KD Company, Inc., 254 B.R. 480, 489 (10th Cir. BAP 2000) ("Renoticing modifications to a plan is not required if the modifications are immaterial.") (citing Beal Bank, S.S. B. v. Jack's Marine, Inc., 201 B.R. 376, 380 n. 4 (E.D. Pa. 1996); In re Cajun Electric Power Coop., Inc., 230 B.R. 715, 730 (Bankr. M.D. La. 1999) (citing In re American Solar King Corp., 90 B.R. 808, 823 (Bank. W.D. Tex. 1998); In re Penrod, 169 B.R. 910, 918 ( Bankr. N.D. Ind. 1994)); In re American Solar King Corp., 90 B.R. at 823 ("Further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."); 5 Collier on Bankruptcy, ¶ 1127.03, at 1127-6 (15th ed. 1987) ("a new disclosure statement is not required in every case where a modification is requested")).

i.      While creditors who elect to receive a New Member Contract in satisfaction of their claim will not receive stock (as originally contemplated by the Plan), they will receive a "membership interest" in the nonprofit Reorganized Debtor with substantially the same rights.

ii.      Without limitation, the Members of the nonprofit Reorganized Debtor will enjoy voting rights consistent with the rights specified in the original Plan, and on Exhibits A, B and E thereto.  The holders of "membership interests" issued under the Confirmed Plan will have the right to: (a) vote to elect the members of the Reorganized Debtor's board of directors; (b) vote on whether assessments may be imposed on Members; and (c) vote on whether the assets of the Reorganized Debtor should be liquidated.

iii.      Further, if the assets of the Reorganized Debtor are liquidated in the future, in whole or part, Members will be entitled to a pro rata distribution of the net proceeds from the liquidation.

iv.      The proposed modifications: (a) avoid substantial administrative and burdens and expenses that the Reorganized Debtor may incur if it is operated as a "for profit" corporation; (b) are consistent with the purpose of the Reorganized Debtor and the nature of its anticipated operations after the Effective Date; and (c) enhance the feasibility of the Confirmed Plan.

DD.      The Court announced other findings of fact and conclusions of law on the record at the Confirmation Hearing, which findings and conclusions are incorporated herein by reference.

EE.      In summary, the Confirmed Plan complies with, and the Debtor has satisfied, all applicable confirmation requirements, and the Confirmed Plan will be confirmed by entry of the separate Confirmation Order.

FF.      Further, the Motion to Modify is well taken, and shall be granted without further

notice of opportunity for hearing, as more specifically provided in the Confirmation Order.

-------------------------------------- END OF DOCUMENT --------------------------------------

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION OF JOINT PLAN OF REORGANIZATION** shall be served to the parties and in the manner designated below:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CM/ECF System:

- Matthew M. Boley mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- John W. Call attorneys@ncvlaw.com, john@ncvlaw.com
- Laurie A. Cayton tr laurie.cayton@usdoj.gov,
- James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Benjamin J. Kotter bkotter@cohnekinghorn.com,
- jdannenmueller@cohnekinghorn.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov,
- James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- David H. Leigh dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- David L. Pinkston bankruptcy_dlp@scmlaw.com
- Quinn A. Sperry Quinn@morrissperry.com, sydney@morrissperry.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- David T X11Berry bt209@berrytripp.com

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

    X       None

    ☐       If there are additional parties list the names and addresses of the additional parties.

    ☐       All parties on the Court's official case matrix.

/s/ Matthew M. Boley

# Exhibit 1

## Cash Flow Projections

|  | __Current__ | __31-60__ | __61-90__ | __>90__ | __Total__ |
|---|---|---|---|---|---|
| A/R (As of 06/30/2015) | 21,467.04 | 12,670.99 | 12,846.50 | 642,614.93 | 689,599.46 |
| A/P (As of 06/30/2015) | 81,504.51 | 17,036.92 | 2,835.06 | 685.71 | 102,062.20 |
| Cash in Bank (As of 05/30/2015) | 58,293.45 |  |  |  |  |

| Estimated Monthly Cash Inflow | Projected Jun-15 | Projected Jul-15 | Projected Aug-15 | Projected Sep-15 | Projected Oct-15 | Projected Nov-15 | Projected Dec-15 |
|---|---|---|---|---|---|---|---|
| Current CW Monthly Dues | 7,565 | 7,565 | 7,565 | 7,565 | - | - | - |
| Current CW Monthly Principle | 14,185 | 14,185 | 14,185 | 14,185 | - | - | - |
| Long Term Renters | 4,900 | 4,900 | 4,900 | 4,900 | 4,900 | 4,900 | 4,900 |
| Off-roaders (explorers) | 5,000 | 5,000 | 5,000 | 3,000 | - | - | - |
| Store Sales | 6,000 | 6,000 | 6,000 | 3,000 | - | - | - |
| Storage | 2,500 | 2,500 | 2,500 | 2,000 | 1,000 | 1,000 | 500 |
| Other - A/R | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Misc* | 3,000 | 3,000 | 3,000 | 3,000 | - | - | - |
| Restructured Entity Dues | - | - | - | - | 381,614 | 102,870 | 102,870 |
| Restructured Entity Principle | - | - | - | - | - | - | - |
| TOTALS: | 48,150 | 48,150 | 48,150 | 42,650 | 392,514 | 113,770 | 113,270 |

* Group Res, Affiliates, Parking Fees, Pet Fees, Other

| | Actual Jun-15 | Projected Jul-15 | Projected Aug-15 | Projected Sep-15 | Projected Oct-15 | Projected Nov-15 | Projected Dec-15 |
|---|---|---|---|---|---|---|---|
| Beg Balance | 58,293 | 143,720 | 282,589 | 181,724 | 73,160 | 436,971 | 496,127 |
| | | | | | | | |
| | | | | | | | |
| Cash In | | | | | | | |
| Monthly Cash Inflow | 61,339 | 48,150 | 48,150 | 42,650 | 392,514 | 113,770 | 113,270 |
| New Membership Sales | - | - | - | - | 120,000 | 180,000 | 180,000 |
| Bridge Loan | 188,959 | 276,311 | - | - | - | - | - |
| Total Cash In | 250,299 | 324,461 | 48,150 | 42,650 | 512,514 | 293,770 | 293,270 |
| | | | | | | | |
| Cash Out | | | | | | | |
| Bank Fees | 2,896 | 1,500 | 1,500 | 1,200 | 1,000 | 1,000 | 1,000 |
| Computer Fees (Internet, etc) | 2,074 | 300 | 300 | 300 | 300 | 300 | 300 |
| Consulting (Audit, Acct, etc) | - | 3,000 | 3,000 | 1,500 | - | - | - |
| D&O Ins | 6,381 | 3,105 | 3,105 | 3,105 | 3,105 | 3,105 | 3,105 |
| Employee Benefits (Ins) | 2,516 | 4,500 | 3,000 | 3,000 | 3,000 | 3,000 | 4,500 |
| Flood Ins | 3,202 | - | - | - | - | - | - |
| Gen Liab/Prop Ins | 43,938 | 8,305 | 8,305 | 8,305 | 8,305 | 8,305 | 8,305 |
| HOA (Zions Gate) | 3,725 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 |
| Interest Payments - Actium | - | 1,890 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Interest Payments - Zions | - | - | - | - | - | - | 14,167 |
| Lease (Copier, Postage Meter) | 1,296 | 955 | 267 | 267 | 955 | 267 | 267 |
| Legal | - | 25,000 | 10,000 | 10,000 | 10,000 | 35,000 | 35,000 |
| Marketing | - | 500 | 3,000 | 6,000 | 8,000 | 10,000 | 10,000 |
| Office Supplies | 4,829 | 750 | 750 | 750 | 750 | 750 | 750 |
| Park Supplies | 6,321 | 2,500 | 3,000 | 3,000 | 2,500 | 1,000 | 500 |
| Payroll | 48,145 | 82,500 | 55,000 | 55,000 | 55,000 | 55,000 | 82,500 |
| Postage | - | 1,000 | - | 1,000 | - | - | 500 |
| Rent | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 | 2,900 |
| Repairs & Maint | 5,632 | 6,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Resale Supplies | 584 | 500 | 1,000 | 1,000 | 500 | 100 | 50 |
| Sunrise Fees | 2,870 | 2,870 | 2,870 | 2,870 | 2,870 | 2,870 | 2,870 |
| Taxes - Personal Property | - | - | - | - | - | - | - |
| Taxes - Property | - | - | - | - | - | 70,000 | - |
| Taxes - Sales Tax | - | 3,500 | - | - | 3,500 | - | - |
| Utilities | 25,346 | 30,000 | 35,000 | 35,000 | 30,000 | 25,000 | 10,000 |
| Work Comp Ins | 2,218 | 2,218 | 2,218 | 2,218 | 2,218 | 2,218 | 2,218 |
| Total Cash Out | 164,872 | 185,592 | 149,015 | 151,215 | 148,703 | 234,615 | 192,732 |
| | | | | | | | |
| Net Cash Change | 85,426 | 138,869 | (100,864) | (108,564) | 363,812 | 59,155 | 100,538 |
| | | | | | | | |
| | | | | | | | |
| Ending Cash Balance | 143,720 | 282,589 | 181,724 | 73,160 | 436,971 | 496,127 | 596,665 |

2016 Projected Income Statement
ACCRUAL METHOD

| | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | YTD 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | |
| Annual Dues | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 499,017 |
| New Memberships | | | | | | | | | | | | | |
| Explorer | 0 | 0 | 0 | 0 | 780 | 2,340 | 3,900 | 3,120 | 3,120 | 2,340 | 2,340 | 2,340 | 20,280 |
| Tent only | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Single Park | 15,000 | 21,000 | 21,000 | 33,000 | 42,000 | 63,000 | 63,000 | 63,000 | 63,000 | 42,000 | 33,000 | 21,000 | 480,000 |
| Multi Park | 70,000 | 100,000 | 100,000 | 150,000 | 200,000 | 300,000 | 300,000 | 300,000 | 300,000 | 200,000 | 150,000 | 100,000 | 2,270,000 |
| Cabin | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Store Sales | 0 | 0 | 0 | 7,000 | 21,000 | 28,000 | 28,000 | 28,000 | 21,000 | 35,000 | 0 | 0 | 168,000 |
| Rental Income | | | | | | | | | | | | | |
| Longterm Renters | 4,560 | 2,255 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 31,815 |
| Cabins/Other | 795 | 225 | 5,000 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 0 | 0 | 7,770 |
| Miscellaneous | 14,420 | 39,127 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 61,047 |
| BK - Accounts Payable Write off | 95,024 | | | | | | | | | | | | |
| **Total Revenue** | 241,384 | 204,192 | 170,835 | 235,085 | 308,865 | 438,425 | 439,985 | 439,205 | 432,205 | 324,425 | 230,175 | 168,175 | 3,537,928 |
| | | | | | | | | | | | | | |
| **PARK EXPENSES** | | | | | | | | | | | | | |
| Apple Garden | 8,261 | 8,061 | 8,061 | 8,861 | 11,745 | 12,945 | 12,945 | 12,945 | 11,945 | 12,289 | 8,889 | 8,889 | 125,830 |
| Echo Island | 13,458 | 16,568 | 15,089 | 16,889 | 19,451 | 22,851 | 24,851 | 26,351 | 19,351 | 19,001 | 29,345 | 15,845 | 239,044 |
| Hot Springs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Knotty Pine | 7,863 | 8,063 | 8,363 | 10,863 | 13,047 | 14,047 | 14,047 | 14,047 | 13,047 | 11,047 | 13,091 | 8,591 | 136,116 |
| Lakeside | 8,483 | 7,611 | 9,211 | 9,011 | 12,995 | 12,795 | 13,395 | 12,795 | 13,395 | 13,895 | 9,539 | 9,389 | 132,508 |
| Pleasant Creek | 7,216 | 7,916 | 8,416 | 10,416 | 14,556 | 15,556 | 15,056 | 15,556 | 14,556 | 13,956 | 15,344 | 11,144 | 149,682 |
| Zions Gate | 3,120 | 3,120 | 3,570 | 3,570 | 3,570 | 3,670 | 3,670 | 3,670 | 3,670 | 3,570 | 3,570 | 3,570 | 42,340 |
| | | | | | | | | | | | | | |
| **Total Park Expenses** | 48,399 | 51,337 | 52,708 | 59,608 | 75,362 | 81,862 | 83,962 | 85,362 | 75,962 | 73,756 | 79,776 | 57,426 | 825,520 |
| | | | | | | | | | | | | | |
| **ADMIN EXPENSES** | | | | | | | | | | | | | |
| Legal | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Bankruptcy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Marketing | 12,000 | 22,000 | 12,000 | 23,200 | 15,200 | 27,200 | 17,200 | 27,200 | 15,200 | 13,200 | 28,200 | 13,200 | 225,800 |
| Sales | 2,600 | 2,600 | 2,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 40,200 |
| Facility/Computer | 11,220 | 10,420 | 10,420 | 11,381 | 10,420 | 10,420 | 11,381 | 10,420 | 10,420 | 11,381 | 11,031 | 11,031 | 129,945 |
| HR/General Admin | 18,450 | 26,950 | 71,117 | 39,417 | 31,967 | 80,267 | 30,267 | 30,267 | 79,267 | 27,817 | 25,867 | 74,450 | 536,100 |
| Payroll | 51,014 | 55,685 | 55,685 | 60,744 | 65,559 | 75,432 | 75,432 | 75,432 | 75,432 | 65,559 | 60,744 | 55,685 | 772,405 |
| | | | | | | | | | | | | | 0 |
| **Total Admin Expenses** | 100,284 | 122,655 | 156,822 | 143,342 | 131,745 | 201,919 | 142,880 | 151,919 | 188,919 | 126,556 | 134,442 | 162,966 | 1,764,450 |
| | | | | | | | | | | | | | |
| **Total Expenses** | 148,683 | 173,992 | 209,530 | 202,950 | 207,107 | 283,781 | 226,842 | 237,281 | 264,881 | 200,312 | 214,218 | 220,392 | 2,589,971 |
| | | | | | | | | | | | | | |
| Operating Income | 92,701 | 30,199 | -38,695 | 32,135 | 101,757 | 154,644 | 213,143 | 201,924 | 167,324 | 124,112 | 15,957 | -52,217 | 947,958 |
| | | | | | | | | | | | | | |
| Other Expenses/Income: | | | | | | | | | | | | | |
| Interest Exp | 18,024 | 18,024 | 18,024 | 18,024 | 18,024 | 18,024 | 13,024 | 13,024 | 13,024 | 13,024 | 12,971 | 12,919 | 186,128 |
| Depreciation/Amortizations | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 127,500 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Other Expenses | 28,440 | 28,440 | 28,440 | 28,440 | 28,440 | 28,440 | 23,857 | 23,857 | 23,857 | 23,857 | 23,805 | 23,752 | 313,628 |
| | | | | | | | | | | | | | |
| Net Income | 64,260 | 1,759 | -67,136 | 3,694 | 73,317 | 126,203 | 189,285 | 178,066 | 143,466 | 100,255 | -7,848 | -75,970 | 634,329 |
| | | | | | | | | | | | | | |
| Estimated Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| Net Income | 64,260 | 1,759 | -67,136 | 3,694 | 73,317 | 126,203 | 189,285 | 178,066 | 143,466 | 100,255 | -7,848 | -75,970 | 634,329 |

**2016 Projected Balance Sheet**
ACCRUAL METHOD

| | 2015 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | | |
| Cash | 596,665 | 488,637 | 513,467 | 474,516 | 485,337 | 571,150 | 746,106 | 377,755 | 501,875 | 554,975 | 521,803 | 519,712 | 445,582 |
| Accounts Receivables | 421,144 | 920,161 | 878,576 | 836,991 | 795,406 | 753,822 | 712,237 | 670,652 | 629,068 | 587,483 | 545,898 | 504,313 | 462,729 |
| Prepaid Expenses | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 | 171,890 |
| Total Current Assets | 1,189,699 | 1,580,687 | 1,563,932 | 1,483,398 | 1,452,634 | 1,496,861 | 1,630,233 | 1,220,298 | 1,302,832 | 1,314,347 | 1,239,591 | 1,195,915 | 1,080,200 |
| | | | | | | | | | | | | | |
| **Fixed Assets** | | | | | | | | | | | | | |
| Buildings | 1,821,993 | 1,821,993 | 1,821,993 | 1,821,993 | 1,821,993 | 1,821,993 | 1,821,993 | 1,846,993 | 1,866,993 | 1,906,993 | 2,006,993 | 2,006,993 | 2,006,993 |
| Land | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 | 1,138,680 |
| Equipment | 979,066 | 979,066 | 979,066 | 979,066 | 979,066 | 979,066 | 979,066 | 994,066 | 1,044,066 | 1,119,066 | 1,119,066 | 1,119,066 | 1,119,066 |
| Leasehold improvements | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 | 2,409,837 |
| Sales of Hot Springs | | | | | | | | | | | | | |
| Total Fixed Assets | 6,349,575 | 6,349,575 | 6,349,575 | 6,349,575 | 6,349,575 | 6,349,575 | 6,349,575 | 6,389,575 | 6,459,575 | 6,574,575 | 6,674,575 | 6,674,575 | 6,674,575 |
| | | | | | | | | | | | | | |
| Accumulated Depreciation | -3,643,351 | -3,653,768 | -3,664,184 | -3,674,601 | -3,685,018 | -3,695,434 | -3,705,851 | -3,716,684 | -3,727,518 | -3,738,351 | -3,749,184 | -3,760,018 | -3,770,851 |
| | | | | | | | | | | | | | |
| Total Net Fixed Assets | 2,706,224 | 2,695,807 | 2,685,391 | 2,674,974 | 2,664,557 | 2,654,141 | 2,643,724 | 2,672,891 | 2,732,057 | 2,836,224 | 2,925,391 | 2,914,557 | 2,903,724 |
| | | | | | | | | | | | | | |
| **Other Assets** | | | | | | | | | | | | | |
| Deposits, & Other | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 |
| Member Financing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Member Financing (Reserves) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| Total Other Assets | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 |
| | | | | | | | | | | | | | |
| Accum Amort - Other Assets | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| Total Net Other Assets | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 | 31,632 |
| | | | | | | | | | | | | | |
| **TOTAL ASSETS** | 3,927,555 | 4,308,126 | 4,280,955 | 4,190,004 | 4,148,823 | 4,182,634 | 4,305,589 | 3,924,820 | 4,066,522 | 4,182,203 | 4,196,613 | 4,142,105 | 4,015,556 |
| | | | | | | | | | | | | | |
| **LIABILITIES** | | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | | |
| Accounts Payable - Post BK | 120,438 | 74,341 | 86,996 | 104,765 | 101,475 | 103,554 | 141,891 | 113,421 | 118,641 | 132,441 | 100,156 | 107,109 | 110,196 |
| Accounts Payable - Pre BK | 95,024 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Current Liabilities | 215,462 | 74,341 | 86,996 | 104,765 | 101,475 | 103,554 | 141,891 | 113,421 | 118,641 | 132,441 | 100,156 | 107,109 | 110,196 |
| | | | | | | | | | | | | | |
| **Other Current Liabilities** | | | | | | | | | | | | | |
| Accrued Expenses | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 | 135,167 |
| Deferred Revenue | 0 | 457,432 | 415,847 | 374,262 | 332,678 | 291,093 | 249,508 | 207,924 | 166,339 | 124,754 | 83,169 | 41,585 | 0 |
| Revolver/DIP Loan | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| Loan - Zions Bank | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,355,230 | 4,343,253 | 4,331,225 | 4,319,144 |
| Total Other Current Liabilities | 4,990,397 | 5,447,829 | 5,406,244 | 5,364,659 | 5,323,075 | 5,281,490 | 5,239,905 | 4,698,321 | 4,656,736 | 4,615,151 | 4,561,590 | 4,507,977 | 4,454,311 |
| | | | | | | | | | | | | | |
| **TOTAL LIABILITIES** | 5,205,859 | 5,522,170 | 5,493,240 | 5,469,424 | 5,424,550 | 5,385,044 | 5,381,796 | 4,811,742 | 4,775,376 | 4,747,592 | 4,661,746 | 4,615,086 | 4,564,507 |
| | | | | | | | | | | | | | |
| **EQUITY** | | | | | | | | | | | | | |
| Stock | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 | -211,323 |
| Retained Earnings | -1,066,981 | -1,002,721 | -1,000,962 | -1,068,098 | -1,064,404 | -991,087 | -864,884 | -675,598 | -497,532 | -354,065 | -253,810 | -261,658 | -337,628 |
| TOTAL EQUITY | -1,278,304 | -1,214,044 | -1,212,285 | -1,279,421 | -1,275,727 | -1,202,410 | -1,076,207 | -886,921 | -708,855 | -565,388 | -465,133 | -472,981 | -548,951 |
| | | | | | | | | | | | | | |
| **TOTAL LIABILITIES & EQUITY** | 3,927,555 | 4,308,126 | 4,280,955 | 4,190,004 | 4,148,823 | 4,182,634 | 4,305,589 | 3,924,820 | 4,066,522 | 4,182,203 | 4,196,613 | 4,142,105 | 4,015,556 |

**2016 Projected Cash Flow**
ACCRUAL METHOD

| | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Annualized |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Operations | 64,260 | 1,759 | -67,136 | 3,694 | 73,317 | 126,203 | 189,285 | 178,066 | 143,466 | 100,255 | -7,848 | -75,970 | 729,353 |
| Depreciation/Amortizations | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 127,500 |
| Adjusted Net Income | 74,677 | 12,175 | -56,719 | 14,111 | 83,733 | 136,620 | 200,119 | 188,900 | 154,300 | 111,088 | 2,985 | -65,136 | 856,853 |
| | | | | | | | | | | | | | |
| Change Provided by Operations | | | | | | | | | | | | | |
| Change in A/R | -499,017 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | 41,585 | -41,585 |
| Change in Prepaids | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Change in A/P | -141,121 | 12,655 | 17,769 | -3,290 | 2,079 | 38,337 | -28,470 | 5,220 | 13,800 | -32,284 | 6,953 | 3,087 | -105,266 |
| Change in Deferred Revenue | 457,432 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | -41,585 | 0 |
| Change in Other Assets | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Change in Accrued Expenses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Change provided by Operations | -182,705 | 12,655 | 17,769 | -3,290 | 2,079 | 38,337 | -28,470 | 5,220 | 13,800 | -32,284 | 6,953 | 3,087 | -146,851 |
| | | | | | | | | | | | | | |
| Change Provided by Financing | | | | | | | | | | | | | |
| Change in Fixed Assets | 0 | 0 | 0 | 0 | 0 | 0 | -40,000 | -70,000 | -115,000 | -100,000 | 0 | 0 | -325,000 |
| Change in Loans | 0 | 0 | 0 | 0 | 0 | 0 | -500,000 | 0 | 0 | -11,976 | -12,029 | -12,081 | -536,086 |
| Net Change provided by Financing | 0 | 0 | 0 | 0 | 0 | 0 | -540,000 | -70,000 | -115,000 | -111,976 | -12,029 | -12,081 | -861,086 |
| | | | | | | | | | | | | | |
| Change Provided by Investment | | | | | | | | | | | | | |
| Change in Stock | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Change provided by Investment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| Net Cash Increase/Decrease for period | -108,028 | 24,830 | -38,950 | 10,821 | 85,812 | 174,957 | -368,351 | 124,119 | 53,100 | -33,172 | -2,091 | -74,130 | -151,083 |
| | | | | | | | | | | | | | |
| Cash at Beginning of Period | 596,665 | 488,637 | 513,467 | 474,516 | 485,337 | 571,150 | 746,106 | 377,755 | 501,875 | 554,975 | 521,803 | 519,712 | 596,665 |
| | | | | | | | | | | | | | |
| Cash at End of Period | 488,637 | 513,467 | 474,516 | 485,337 | 571,150 | 746,106 | 377,755 | 501,875 | 554,975 | 521,803 | 519,712 | 445,582 | 445,582 |